IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL E. PHINNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-0797-CV-W-GAF-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff filed an application seeking disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*. Previously, Plaintiff had filed another application seeking supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Plaintiff's applications were denied at the initial determination stage of administrative review.

On May 20, 2008, following a March 12, 2008 hearing, an administrative law judge ("ALJ") rendered a decision in which he found that Plaintiff was not under a "disability" as defined in Titles II and XVI at any time through the date of the decision. More specifically, the ALJ concluded that Plaintiff – even taking into account his impairments – retained the residual functional capacity ("RFC") to perform his prior work or, in the alternative, to perform a significant number of jobs in the national economy. The Appeals Council of the Social Security Administration denied Plaintiff's request for review.

Review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997). Substantial evidence is less than a preponderance, but enough that

a reasonable mind might accept it as adequate to support the Commissioner's conclusion. *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998). If substantial evidence supports the Commissioner's decision, the Court may not reverse even if a different outcome is also supported by substantial evidence. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).[1]

Plaintiff argues on appeal that the ALJ did not properly evaluate his credibility. In assessing credibility, the ALJ noted that Plaintiff "worked and looked for work well beyond his alleged onset date of disability." The ALJ may properly note a claimant's work activity during a period of time in which he alleges disability as a significant factor in finding the claimant not credible. *Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (among other factors, claimant worked ten hours per week in a catering business); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the claimant's] . . . part-time work [was] inconsistent with her claim of disabling pain."). The ALJ may also consider "the fact that a claimant left work for reasons other than a medical condition." *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004).

Plaintiff claimed he became unable to work on March 27, 2004.[2] However, he also testified that he worked full- and part-time as a dishwasher and prep cook for a period ending in January 2008, when he was laid off due to "labor cost." The ALJ also noted that Plaintiff interviewed for a job in May 2005, and reported looking for work in August and November

---

[1] Upon review of the record and the law, the Defendant's position is found to be persuasive. Much of the Defendant's brief is adopted without quotation designated.

[2] In one form he completed in support of his application, Plaintiff claimed he became unable to work on January 24, 1999. He also reported in that form that he worked full-time as janitor or cashier from July 1993 until March 2004.

2005, and again in November 2006. As Plaintiff continued to seek employment after the date he alleges he became disabled, and held a full-time job as late as 2008 which he lost for reasons unrelated to his impairments, the ALJ could conclude that Plaintiff's work history significantly eroded his credibility.

The ALJ also noted that objective evidence was inconsistent with Plaintiff's claims. Although an ALJ may not reject a claimant's subjective complaints solely for lack of objective medical evidence, the ALJ may consider the absence of objective medical evidence supporting the degree of severity alleged. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary" (*citation omitted*); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ noted Dr. Kenagy's finding in a January 2005 physical examination that Plaintiff had somewhat reduced range of motion in his left shoulder and normal spine range of motion, could walk on his heels and toes and squat without difficulty, had good extremity strength and intact reflexes and sensation, and was "essentially normal" upon examination.

The ALJ also noted Dr. Byergo's finding in a January 2008 mental examination that Plaintiff was oriented, spoke normally, demonstrated "no cognitive impairment" on a mental-status test, demonstrated no evidence of suicidal ideation, obsession, ideas of reference, delusions, hallucinations, or other thought disorders, had no problems with understanding, memory, concentration, or persistence, and interacted in a socially appropriate manner. He also noted that Dr. Reddy's treatment records reflected "mainly mild symptoms." The ALJ could conclude, on balance, that the objective evidence of record did not support Plaintiff's claims of severe back problems, standing limitations, and memory and concentration problems.

The ALJ also considered both consultative examiners' opinions. *McCann v. Barnhart*, 127 Fed. App's 229, 230 (8th Cir. 2005) (noting that the ALJ properly considered the "lack of medical opinion evidence" supporting the claimant's disability claim) (*citing Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000)). Specifically, he noted Dr. Byergo's opinion that there was no psychological reason that would prevent Plaintiff from continuing to work full-time as a dishwasher, and Dr. Kenagy's opinion that Plaintiff was not significantly limited at walking, lifting, sitting, or standing.

Plaintiff argues that the ALJ failed to consider his brother's testimony. However, because the evidence used by the ALJ to discredit Plaintiff also supports discounting his brother's testimony, the ALJ's failure to give specific reasons for disregarding this testimony is inconsequential. *Young*, 221 F.3d at 1068. ("We find, however, that although the ALJ did not expressly discredit [the claimant's] testimony, he did so implicitly by evaluating her testimony in light of the factors set forth in *Polaski* . . .") (*citing Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995)). *But see Smith v. Heckler*, 735 F.2d 312, 317 (8th Cir. 1984) (an ALJ must specifically discuss rejection of claimant's witnesses' testimony and must make express credibility determinations). For instance, Plaintiff's brother's testimony about concentration and memory problems conflicts with Dr. Byergo's finding that Plaintiff appeared to have no problems with understanding, memory, or concentration. Moreover, Plaintiff's brother's remaining testimony about "isolative" and abnormal behavior and occasional poor hygiene would not support greater limitations than the ALJ assessed at step four of the sequential evaluation.

The ALJ considered the subjective aspects of Plaintiff's complaints consistent with the applicable regulations. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. He articulated the

4

inconsistencies on which he relied in discrediting Plaintiff's complaints, and those inconsistencies find support in the record. *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996).

Additionally, it is a claimant's burden to prove his RFC at Step Four of the sequential evaluation, and it is the ALJ's responsibility to determine the RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of his limitations. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004); 20 C.F.R. §§ 404.1545, 416.945. The RFC need only include credible limitations. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).

SSA regulations and rulings address the manner in which the ALJ must consider medical opinions in determining residual functional capacity. 20 C.F.R. §§ 404.1527, 416.927; SSR 96-2p. A treating physician's opinion is due "controlling weight" under the regulations and rulings if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2)). Consultative opinions are generally entitled to less weight than treating opinions. 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2) (2008). Among consultative opinions, those of physicians who examined the claimant generally receive greater weight than those of physicians who did not. *Id*. The opinions of other healthcare providers, such as nurse practitioners and therapists, cannot establish impairments, but serve as "evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work." *Lacroix v. Barnhart*, 265 F.3d 881, 887 (8th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

5

The ALJ found that Plaintiff had the severe impairments of an adjustment disorder and degenerative joint disease of the left shoulder and lower back. He concluded that Plaintiff nevertheless retained the RFC to perform medium work, except for overhead work. The ALJ also specified that Plaintiff was restricted to unskilled work with no public contact.

The ALJ's determination reflects the treatment notes of Dr. Kenagy's and Dr. Byergo's consultative findings, and the ALJ's conclusions that Plaintiff' subjective complaints were not entirely credible. The ALJ's determination also reflected his finding that Dr. Reddy's and Ms. Thiede's February 2006 opinions were "entitled to little weight."

Plaintiff argues that the ALJ gave insufficient weight to Dr. Reddy's and Ms. Thiede's opinions. However, the ALJ explained that these opinions were due little weight because they conflicted with treatment observations and other evidence of record.

The ALJ noted that Ms. Thiede's opinion "essentially corroborated" Dr. Reddy's. Both completed the same questionnaire in late February 2006. Both Dr. Reddy and Ms. Thiede indicated that Plaintiff's symptoms included mood disturbance, emotional lability, pervasive loss of interest, difficulty thinking or concentrating, and social withdrawal.[3] Both believed that Plaintiff experienced moderate restrictions in daily living, and marked limitations in social functioning and maintenance of concentration, persistence, or pace, and would experience episodes of decompensation. Both opined that Plaintiff would be absent from work more than four days per month and would find it difficult to sustain a job.

---

[3]Ms. Thiede also claimed that Plaintiff's symptoms included oddities of thought or behavior, perceptual disturbances, and an inappropriate affect. Dr. Reddy did not indicate these symptoms, but claimed that Plaintiff had decreased energy.

The ALJ discounted Dr. Reddy's and Ms. Thiede's assessments as "totally inconsistent" with their treatment records. An ALJ may discount a treating physician's opinion if it is inconsistent with that physician's treatment notes. *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) ("The ALJ rejected [a physician's] assessment because it was inconsistent with [the physician's] own treatment notes, with objective testing, and with other medical evidence in the record. Our review of the record . . . confirms the ALJ's conclusion.").

In his records, Dr. Reddy consistently described Plaintiff's affect as "appropriate" and his mood as "normal" or improved. Though Dr. Reddy claimed that Plaintiff's symptoms included such problems as emotional lability, pervasive loss of interest, difficulty thinking or concentrating, social withdrawal, and decreased energy, he did not report any of these issues in his treatment records. In fact, the only observation in Dr. Reddy's treatment records that would support any limitation is his one-time observation of poor hygiene in January 2006.[4] In fact, Plaintiff's complaints over the course of treatment do not support Dr. Reddy's limitations.

Ms. Thiede's treatment observations are even fewer in number and equally unsupportive. In December 2004, she noted that Plaintiff "remains very suspicious of mental health services." In two appointments in January 2005, she noted that "he usually goes on tangents requiring redirection," and "was becoming more comfortable in sessions." In March 2005, she reported no objective findings. Yet when she completed her opinion eleven months later, Ms. Thiede listed multiple problems that did not appear in her notes, such as an inappropriate affect, perceptual

---

[4] During other examinations, including a subsequent one, Dr. Reddy noted good or "very good" grooming and hygiene.

7

disturbances, emotional lability, and pervasive loss of interest. She also claimed that Plaintiff had schizoid personality disorder, a diagnosis that does not appear in her treatment records.

The ALJ Also discounted these assessments as inconsistent with Dr. Byergo's January 2008 assessment. *See Davidson v. Astrue*, 501 F.3d 987, 991 (8th Cir. 2007) ("an appropriate finding of inconsistency with other evidence alone is sufficient to discount" a treating physician's assessment). While Dr. Reddy and Ms. Thiede claimed that Plaintiff had difficulty thinking or concentrating, Dr. Byergo noted that Plaintiff demonstrated no cognitive impairment during a mental status exam, had average mental functioning, and did not appear to have problems with "understanding, memory, concentration, or persistence." While Dr. Reddy and Ms. Thiede claimed that Plaintiff would miss more than four days of work per month and would find it difficult to work at a regular job, Dr. Byergo perceived "no psychological reasons" that would prevent Plaintiff from continuing to work full-time.

As Dr. Reddy's and Ms. Thiede's opinions were inconsistent with treatment records and Dr. Byergo's consultative findings, the ALJ could assign these opinions little weight. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (an ALJ's determination to grant treating physicians' opinions less weight was supported by one-time medical exam but also was supported by medical evidence; the ALJ's determination did not lie outside the available zone of choice) (*citing Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006)).

Plaintiff claims that "it is impermissible for the ALJ to mine the record to find tidbits that support his ultimate decision while disregarding evidence that does not." However, the ALJ's finding reflects the lack of supportive observations in Dr. Reddy's and Ms. Thiede's treatment

8

notes, rather than a selective reading of the record. Plaintiff points to no treatment observations that support these sources' opinions.

Plaintiff also argues that even if Dr. Reddy's opinion was not entitled to controlling weight, the ALJ erred by not evaluating this opinion according to the factors listed in 20 C.F.R. §§ 404.1527 and 416.927. In this regard, it is proper for the Court to look at all of the ALJ's analysis, not just his summary or conclusion as Plaintiff seems to suggest. *Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009) ("Indeed, the ALJ wrote nearly four full pages of analysis regarding the consistency between [the claimant's] self-reports contained in the record, her treating physicians' notes and assessments, the medical evidence and the hearing testimony. In doing so, the ALJ provided a thorough analysis of the inconsistencies he noted in the record, and those inconsistencies are supported by the record."). The ALJ explained that he considered opinion evidence in accordance with the sections Plaintiff cites. He also specified that he gave these opinions "little weight." As the ALJ's explanation for assigning Dr. Reddy's and Ms. Thiede's opinions little weight was sufficiently detailed to permit review, the explanation was satisfactory. SSR 96-2p (The ALJ's explanation for the weight given a treating source's opinion "must be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave . . . and the reasons for that weight").

Plaintiff also claims that the ALJ's "only mention of Ms. Thiede's opinion is that is it [sic] inconsistent with the outpatient treatment records." In fact, the ALJ referred to this opinion several times. The ALJ was also plainly referring to Dr. Reddy's and Ms. Thiede's opinions when he explained that "these assessments" were inconsistent with Dr. Byergo's examination findings.

9

Plaintiff also argues that Dr. Byergo's opinion was not "in complete contradiction" to Dr. Reddy's and Ms. Thiede's, but the ALJ never claimed that it was. Rather, he claimed that Dr. Reddy's and Ms. Thiede's opinions were "inconsistent with" Dr. Byergo's, and "totally inconsistent" with their own treatment records. Moreover, the ALJ's residual functional capacity finding reflects the moderate limitations noted by Dr. Byergo because it limits Plaintiff to "unskilled work with no public contact."

The ALJ must determine residual functional capacity based on all relevant evidence, including medical records and opinions, and the claimant's credible limitations. *Harris*, 356 F.3d at 930; *Tindell*, 444 F.3d at 1007; 20 C.F.R. §§ 404.1545, 416.945. Substantial evidence supports the ALJ's RFC determination.

At the fourth step of the sequential evaluation process, the ALJ must find the claimant "not disabled" if he can perform any of his past relevant work. 20 C.F.R. §§ 405.1545(a)(4)(iv), 416.920(a)(4)(iv). At this stage, the ALJ may, but is not required to, consult a vocational expert. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) ("The testimony of a VE is required only when the claimant carries his initial burden of showing that he is incapable of performing past relevant work . . . ."). The ALJ did consult a vocational expert, who testified that a claimant with Plaintiff's RFC could return to his past work as a janitor or cleaner. The ALJ concluded that Plaintiff was therefore not disabled.

Though the ALJ could have ended his analysis at Step Four of the sequential evaluation, he also indicated that Plaintiff would be found "not disabled" at Step Five. If a claimant cannot perform his past work and has significant non-exertional impairments, the ALJ must obtain vocational expert testimony to assist in the determination of whether the claimant can perform

10

other work.  *Lucy v. Chater*, 113 F.3d 905, 908-09 (8th Cir. 1997).  A claimant who can perform other work is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The vocational expert testified that a claimant with Plaintiff's RFC could work as a wire-coating-machine operator, finishing-machine operator, spool winder, and prep cook.  Consequently, Plaintiff would not be disabled even if he could not return to his past work as a cleaner or janitor.

The ALJ's hypothetical questions to the vocational expert were proper, and need not include allegations which were determined not to be credible.  *Guilliam v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) ("Discredited complaints of pain . . . are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them."); *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("The fact that the ALJ omitted from his hypothetical questions those aspects of [claimant's] subjective complaints that the ALJ considered non-credible does not render the questions faulty.").  Because the hypothetical questions included only those limitations which the ALJ found credible, and excluded those limitations discredited for a legally sufficient reason, substantial evidence supports the ALJ's findings that Plaintiff could return to his past work and could perform other work.  20 C.F.R. §§ 404.1520, 416.920.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: May 29, 2009

11

Case 4:08-cv-00797-GAF   Document 13   Filed 05/29/09   Page 11 of 11